[Civ. No. 309. Second Appellate District.—May 28, 1907.]

## MORRIS HURWITZ, Respondent, v. S. L. GROSS, Appellant.

ACTION FOR BREACH OF CONTRACT—SALE OF LAND—ASSUMPTION OF CHATTEL MORTGAGES—CLAIMS OF DEFENDANT—BURDEN OF PROOF—FINDINGS.—In an action to recover damages for a breach of contract by the defendant, in consideration of a sale and conveyance of land to him by the plaintiff, to assume and pay two chattel mortgages on the orange crop growing on the land conveyed and also upon plaintiff's remaining land, where the defendant by answer and cross-complaint alleged that it was agreed that the entire crop was to belong to defendant, and that the crop taken by the mortgagee was removed by plaintiff without defendant's consent, the burden of proof was upon the defendant to prove his allegations, and where he failed to do so, the court properly found against him in that regard.

ID.—SINGLE CAUSE OF ACTION—ELEMENTS OF DAMAGE—MISJOINDER NOT SHOWN.—Where the complaint counted on a cause of action for damages for breach of the contract in an aggregate sum, but divided the aggregate amount of the two chattel mortgages assumed by defendant into two elements of damage—the first, for partial failure of the consideration of the conveyance, measured by the proceeds of oranges belonging to plaintiff, which were applied toward payment of the chattel mortgages so assumed; and second, the unpaid balance necessary to clear plaintiff's remaining land from the lien of the mortgages—it states but one cause of action for breach of the contract to plaintiff's injury, and shows no misjoinder of causes of action.

ID.—UNCERTAINTY OR AMBIGUITY NOT MISLEADING.—Where there is no uncertainty or ambiguity which could mislead the defendant in pleading to the complaint, a demurrer on that ground was properly overruled.

ID.—PARTIES—MORTGAGEE.—The mortgagee was neither a necessary nor a proper party to the action for breach of the contract made

by the defendant with the plaintiff to assume •and pay off the mortgages.

ID.—ESTOPPEL OF DEFENDANT—ASSUMPTION OF MORTGAGE MADE BY THIRD PARTY—DIRECTION TO MORTGAGEE.—Where the larger crop mortgage was executed by a third party, and constituted a lien on all of plaintiff's crops, its assumption by defendant, in considera-tion of the conveyance of land to him, estopped him from ques-tioning whether plaintiff's obligation to pay it was a legal or moral one; and having directed the mortgagee to apply the pro· ceeds of plaintiff's oranges to its payment, he is estopped to deny the validity and enforceability of the obligation against plain-tiff's demand for a repayment of the money so applied.

ID.—CONSTRUCTION OF CONTRACT—EVIDENCE, PURPOSE AND CIRCUM· STANCES.—In ascertaining the meaning of the language of the contract, evidence showing its purpose or object, and the circum-stances surrounding its execution, was admissible, and must be taken into consideration in its construction.

ID.—EVIDENCE—EXHIBITS AND RECORDS OF CORPORATION MORTGAGEE— IDENTIFICATION.—Exhibits, copies of account sales check sheets of the corporation mortgagee showing particulars of oranges re-ceived and sold by it for account of plaintiff, also, a "ledger sheet" and "weigher's receiving account slip," all of which were identified as original papers and records of the corporation by their proper custodian, were admissible in evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

Herbert Cutler Brown, and George H. Moore, for Appel-lant.

Charles L. Batcheller, and Thomas C. Ridgway, for Re-spondent.

TAGGART, J.—This is an action to recover damages for failure to perform an agreement to assume payment of two certain chattel mortgages. Judgment was for plaintiff, and defendant appeals from the judgment and an order denying his motion for a new trial.

Plaintiff, on the nineteenth day of January, 1905, was the owner of four parcels of land (designated in his complaint

as one, two, three and four, respectively), located in Los Angeles county, upon which, or portions of which, there were growing crops. Against these lands and the crops thereon there subsisted four mortgages: two against the lands for $13,000 and $5,000, respectively, and two against the growing crops, dated April 29, 1904, and August 15, 1904, given to secure the payment of promissory notes for the sum of $2,000 and $700, respectively, and each due one day after date. These crop mortgages were held by the California Citrus Union, which, at the request of plaintiff, picked and removed of said mortgaged crops, before January 19, 1905, oranges belonging to plaintiff of the net value of $1,004.47, as determined by the subsequent sales thereof made by said Citrus Union.

On January 19, 1905, plaintiff sold to defendant parcels designated as one and two, for a consideration expressed in the "escrow instructions" as follows: "We are to pay Mr. Hurwitz $2300 twenty-three hundred for above property and assume $13000.00 Mtg. or Tr. deed & all Int. due, & assume $5000 Mtg. or Tr. deed & Int. from Jan. 20th 05 & assume $2700 Chat. Mtg. & all Int. from Jan. 20, -05. Hurwitz to show statements from last 2 mtgee's that said int. is paid to said date." On the same day plaintiff, in execution of said agreement, made a conveyance to defendant of parcels 1 and 2, wherein was contained the following clause: "Subject to all incumbrances now of record against said property, all of which incumbrances the parties of the second part assume and agree to pay." Defendant complied with the other terms of the "escrow," but failed to pay the chattel mortgages and free parcels 3 and 4 from the lien thereof, and notified the Citrus Union to apply the proceeds of sales of said oranges, picked prior to January 19th, to the payment of the indebtedness secured by said mortgages, which was done.

The complaint counts on a cause of action for damages for breach of contract, and fixes the amount of such damages at $2,700—the aggregate of the principal sums of said two chattel mortgages, which damages are divided into two elements: The first ($1,213), for partial failure of consideration for the conveyance made by plaintiff to defendant, being measured by the proceeds of sales of oranges belonging to plaintiff, applied to the payment of the chattel mortgages by the Citrus Union after defendant had assumed the same; and, second

($1,487), the unpaid balance necessary to clear said third and fourth parcels of land, retained by plaintiff, from the lien of said chattel mortgages.

By answer and cross-complaint defendant claimed that plaintiff agreed that the entire orange crop for the year 1904 should pass by the conveyance mentioned in the complaint, and that plaintiff removed the portion of said orange crop so taken by the Citrus Union without defendant's knowledge or consent. No evidence was introduced on this issue, and the court properly found against the contention of defendant in this regard. The burden was upon defendant to establish his allegations.

While there are two elements of damage specially alleged in the complaint, it states but one breach of contract, and but one cause of action. This is sufficiently stated. It appears from the allegations of the complaint that defendant agreed to clear parcels 3 and 4 from the liens of the chattel mortgages, and to assume the payment thereof, that there was a sufficient consideration for such promise or agreement, that he failed to perform his agreement, and that plaintiff was injured by reason of such failure. The cause of action must not be confused with the remedy or relief sought. (*Frost* v. *Witter*, 132 Cal. 426, [84 Am. St. Rep. 53, 64 Pac. 705].) This view of the complaint disposes of the errors complained of in the rulings of the trial court upon defendant's demurrer to the complaint on the ground of misjoinder, and the motions to strike out and to sever and separately state the two alleged causes of action which it was contended were misjoined in the complaint. The special demurrers based upon alleged uncertainty of statement of ownership and other allegations as to the oranges taken by the Citrus Union and applied to the payment of the indebtedness secured by the chattel mortgages were properly overruled. There was unnecessary detail, perhaps, in the allegations relating to this element of damage, but no uncertainty or ambiguity that could mislead the defendant in pleading to the complaint.

The Citrus Union was neither a necessary nor proper party to the action. It had a right under its contract to apply the proceeds of the orange sales to the indebtedness due it, and plaintiff could not recover the money back merely because he had contracted with defendant to pay the whole of the mortgages, and the latter had failed to do so. Plaintiff's only right

of action was against defendant for the breach of his contract.

The crop mortgage for $2,000 given by Gore constituted a lien upon all of plaintiff's crops, and its assumption by defendant was made a part of the consideration for the conveyance to him.  He cannot now question whether plaintiff's obligation to pay it was a legal or moral one.  (*Hartwig* v. *Clark*, 138 Cal. 668, [72 Pac. 149].)  Plaintiff treated it as a binding obligation, and so did defendant when he directed the Citrus Union to apply the proceeds of sales of plaintiff's oranges to its payment, and also later, when he paid the balance due thereon to the Citrus Union.  Having directed the application of plaintiff's money to its payment, he is estopped to deny the validity and enforceability of the obligation against plaintiff's demand for a repayment of the money so applied.

The construction of the contract by the trial court was correct.  In ascertaining what is meant by the language used in a written instrument, the object in view and the circumstances surrounding its execution must be taken into consideration.  (*Neale* v. *Morrow*, 150 Cal. 414, [88 Pac. 815].)  Taking the contract here under consideration by the four corners, and reading it with the eyes of those who made it, by the light, and under the circumstances, which surrounded its execution (*Walsh* v. *Hill*, 38 Cal. 487), we see that plaintiff had four parcels of land encumbered with mortgages; that defendant agreed, in consideration of the conveyance to him of two of the parcels, to assume the payment of all the liens on the four parcels and pay the plaintiff $2,300.  The consideration to plaintiff then was the clearing of parcels 3 and 4 from the mortgage liens and the $2,300 cash in hand.  The oranges severed from the land prior to the sale were the property of plaintiff.  The amount of the crop mortgages, ascertained on the face of the agreement, was $2,700.  This amount was fixed as the liability of defendant, by the contract, and the plaintiff was required to pay the interest thereon to the date of sale.  This construction of the "escrow" and the clause in the conveyance justifies the conclusions reached by the trial court.  The evidence introduced warrants the findings of the court, and justified it in denying the defendant's motion for a nonsuit.

A careful consideration of the errors assigned in connection with the admission of evidence discloses no prejudicial error.

A number of exhibits, copies of account sales check sheets of the California Citrus Union showing particulars of oranges received from, and sold for and on account of, M. Hurwitz, were admitted in evidence over the objections of defendant. These were identified by the employees of the company in whose custody they were, who testified that they were the original sheets received from the district agent at the Covina office, the place at which the oranges were received and from which the shipments purported to have been made; that the witness did not make the entries; they were not made in his presence, and that he had no information as to the knowledge of the district agent who made them. The district agent at Covina testified that the transactions took place during his predecessor's incumbency; that he knew nothing of the transactions to which they referred except as to the custom of making such records; that he received them from his predecessor as records of the office; that he was acquainted with the agent in whose handwriting they were and with his handwriting, and that they were in his handwriting.

A "ledger sheet" and "Weigher's Receiving Account Slip" were also admitted in evidence over the objections of defendant. These were identified by the chief clerk in the office of the Citrus Union as original records from that office. He also stated that the bookkeeper who kept the book showing the account of Mr. Hurwitz was no longer in the employ of the company, and when last heard from was in Arizona. The witness testified that the "ledger sheet" introduced was the original card showing the only account kept with the chattel mortgages in question, and showed all the entries in relation thereto and all the credits given thereon.

A number of questions were asked of these witnesses as to the matters displayed upon the records so introduced, all of which were objected to by defendant, and his objections were overruled, the trial judge stating in explanation of his rulings in this regard at one time that it might be understood that the witness made none of the entries, had no knowledge of the facts about which he was testifying, but that he had received the instruments, whose contents he was repeating, as records of the office which it was the custom of the company to keep, in the custody of the employee filling the position

which the testifying witness did. The court, by its remarks in some instances, expressly distinguished between the statement of a fact known to the witness and the statement of matters appearing on the records introduced, and permitted the witness to state the latter. In one instance at least, where the question called for that which it was apparent from the question the witness could only answer from the record the court directed the witness: "He can state whether there is any record of any such payment, regardless of whether they existed in fact."

Questions relating to the correctness and accuracy of books sought to be introduced in evidence have generally arisen in cases where the books are introduced on behalf of the party keeping them, and are in the nature of self-prepared and self-serving declarations. They were permitted to be introduced at common law only because the party could not testify in his own behalf, and when parties to an action were first permitted to testify, it was held by some of the courts that the books of a party could no longer be admitted in evidence. (*Roche* v. *Ware*, 71 Cal. 377, [60 Am. Rep. 539, 12 Pac. 284].) Books of account so belonging to the parties to the litigation are said to be in the nature of secondary or supplementary evidence of the facts therein stated (*Bushnell* v. *Simpson*, 119 Cal. 661, [51 Pac. 1080]), but have been held admissible, when preliminary proof has been made, to support a claim against the estate of a deceased person where the claimant cannot be a witness to testify to his own claim. (*Cowdery* v. *McChesney*, 124 Cal. 363, [57 Pac. 221]; *City Sav. Bank* v. *Enos*, 135 Cal. 172, [67 Pac. 52].) The question of who may make the preliminary proof and the limitations upon the parties' testimony in such cases appears to be still open to discussion in this state. (*Stuart* v. *Lord*, 138 Cal. 677, [72 Pac. 142].) In *White* v. *Whitney*, 82 Cal. 166, [22 Pac. 1138], the rule is adopted from Wharton on Evidence, that "a tradesman's book of original entries is, in most jurisdictions, received in evidence as *prima facie* proof, when supported by the tradesman's oath," and cases in this state are cited which, it is said, sanction, although they do not expressly declare, this rule.

We think, however, that a different rule should be applied to the books here under consideration from that which is applied to the books of a party to the litigation producing them

to serve his own purposes and aid his own claim. The exhibits here admitted are the records of the business transactions of a corporation required by law to be kept by all corporations for profit. (Civ. Code, sec. 377.) They constitute the "memory" of the transactions of the corporations. Having been produced as the regularly kept and original books of the corporation, identified as such by their proper custodians, they are admissible in evidence. (*City Sav. Bank* v. *Enos*, 135 Cal. 172, [67 Pac. 52].) The exhibits were, therefore, entitled to be admitted upon the preliminary proof given.

The practice followed by the trial judge in permitting the witnesses who were merely custodians of the record, without pretense of knowledge as to the transactions recorded, to read from the record in response to direct questions as to the fact, is one much pursued by some trial judges where the case is tried without a jury. Such a practice is open to abuse, and should be pursued with great caution. Deductions made by bookkeepers greatly aid the court and materially reduce its labors, but in the statement of the record as a fact, if not confined to a literal reading of the record, the witness' own inferences are liable to creep in and a wrong interpretation of the writing be thus had.

A careful examination of the record discloses no statements of witnesses so testifying to what the record contained which do not appear in the exhibits, except, perhaps, one or two answers to questions as to what the books did *not* show, which were competent and relevant questions in themselves. The exhibits being *prima facie* evidence, and no attack being made upon their correctness, we cannot see that appellant was prejudiced by the rulings of the court in permitting these questions to be asked and answers to be given. All the evidence relating to the Citrus Union's books merely tended to increase or diminish one branch of the damage alleged by a corresponding decrease or increase of the other branch. Two thousand seven hundred dollars were necessary to release tracts 3 and 4 from the lien of the chattel mortgages. To the extent that plaintiff's oranges were used to pay this sum he was entitled to recover from defendant, and to the extent that the defendant failed to pay the mortgages plaintiff was entitled to compel him to do so or pay the amount necessary for this purpose. It was immaterial to defendant upon

which branch he was required to pay, and the books of the Citrus Union only determined into which pocket of plaintiff the money should go, to reimburse him for his oranges taken or to clear his land from the lien against it. Conceding that some, or all, of the evidence relating to the books of the Citrus Union was improperly admitted, the defendant was not prejudiced thereby.

No error appearing in the record, the judgment and order appealed from are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 27, 1907.