[Civ. No. 1803. Second Appellate District.—November 11, 1916.]

MONTGOMERY & MULLEN LUMBER COMPANY (a Corporation), Respondent, v. OCEAN PARK SCENIC RAILWAY COMPANY (a Corporation), Appellant.

EVIDENCE—BOOKS OF ACCOUNT—TESTIMONY OF MANAGER OF PLAINTIFF. In an action to recover an alleged balance due for lumber sold and delivered, books of account containing the original charges are properly admitted in evidence, upon the testimony of the manager of the lumber company that the books were kept under his direction and were correct, although the entries were made by other employees.

ID.—ACCOUNT BOOKS—FOUNDATION FOR ADMISSION.—In order to lay the foundation for the admission of such evidence it must be shown that the books in question are books of account kept in the regular course of the business, that the business is of a character in which it is proper or customary to keep such books, that the entries were either original entries or the first permanent entries of the transac-

tions, that they were made at the time, or within reasonable proximity to the time, of the respective transactions, and that the person making them had personal knowledge of the transactions, or obtained such knowledge from a report regularly made to him by some other person employed in the business whose duty it was to make the same in the regular course of business.

Id.—New Trial—Newly Discovered Evidence.—A motion for a new trial on the ground of newly discovered evidence is properly denied where, in the opinion of the trial court, it is not probable that the additional evidence would have produced a different result.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. John W. Shenk, Judge.

The facts are stated in the opinion of the court.

Walter M. Rheinschild, and Valentine & Newby, for Appellant.

Sheldon Borden, George H. Moore, and Richard J. Culver, for Respondent.

CONREY, P. J.—The defendant's appeal is from an order denying its motion for a new trial. The action was brought to recover an alleged balance due to the plaintiff for lumber sold and delivered to the defendant. It was found by the court that the plaintiff sold and delivered to defendant lumber of the value of $2,875.15, of which sum two thousand dollars was paid by the defendant. Appellant claims that the evidence is insufficient to support the finding that any lumber was delivered exceeding in value the amount paid. The controversy between the parties relates to the quantity of lumber delivered, and not to the prices charged with respect to the various items.

C. W. Pinkerton, the manager of plaintiff's business, testified to the sale of lumber by plaintiff to the defendant. Certain books were produced in court which he said contained the original charges. From those books a bill of particulars was compiled, which, prior to the trial, was served upon the defendant and which was used in connection with Pinkerton's testimony. He said: "Our office system is such that when we send an order to the yards to be loaded for delivery, we have working in the yards men that we call salesmen, they take

that order, they load in on the wagon, and after they get the load loaded on the wagon, they go to the office and make the charge on these books as the load is loaded, those entries are made up in triplicate, the salesman in making that charge simply itemizes out so many pieces of each kind, the triplicate copy is given to the driver and delivered on the job with the load; then in the course of business the office force makes the extension in dollars and cents. Although these books appear to have been written with a carbon they were made at the time the original ticket was made. The original is sent at the end of the month to the customer. These books were kept under my direction and I know to my own knowledge that these are correct charges." Upon that statement, the books as a whole and as one exhibit were introduced in evidence. They are not contained in the record on appeal. The bill of particulars was by stipulation introduced into the bill of exceptions in lieu of setting out a copy of the books, and Pinkerton testified that the original bill of particulars corresponds with the charges as contained in the books, "so far as feet, etc., are concerned."

The defendant objected to the bill of particulars when it was offered in evidence, and now urges that its admission was error. If the books themselves were admissible, we think that the defendant could not be prejudiced by the use which the court made of the bill of particulars. Its admission and use were distinctly stated by the court to be for purposes of convenience and the saving of time, the books being accepted as the original evidence. The only question then, as to this matter, relates to appellant's contention that no sufficient foundation was laid for the admission of the books. Counsel for appellant point out that the men who actually made the entries in the books did not themselves testify to the correctness of the items entered by them. This was not necessary in order to make a *prima facie* showing, since Pinkerton testified that the books were kept under his direction and were correct. The record thus made substantially conforms to the requirements of the rule limiting the admission of books in evidence, as stated in *Chan Kiu Sing* v. *Gordon,* 171 Cal. 28, [151 Pac. 657], as follows: "In order to lay the foundation for the admission of such evidence it must be shown that the books in question are books of account kept in the regular course of the business, that the business is of a character in

which it is proper or customary to keep such books, that the entries were either original entries or the first permanent entries of the transactions, that they were made at the time, or within reasonable proximity to the time, of the respective transactions, and that the person making them had personal knowledge of the transactions or obtained such knowledge from a report regularly made to him by some other person employed in the business whose duty it was to make the same in the regular course of business." It is insisted that the court erred in admitting the testimony above stated of the witness Pinkerton as to the correctness of the accounts, of which accounts appellant says that Pinkerton had no personal knowledge. *Chandler* v. *Robinett,* 21 Cal. App. 333, 337, [131 Pac. 891], is cited in support of this objection. But in that case it appeared that the witness who testified that the book of account was "a true and correct account of the transaction," was a bookkeeper who had himself made the entries without having personal knowledge of the transactions, and the entry in the book itself was so indefinite and uncertain that it was held to be inadmissible as evidence of the fact sought to be proved. Neither was it shown that the entry had been made at a time contemporaneous with the transaction to which it was supposed to relate. We think that the testimony of Pinkerton to which this objection is urged was properly admitted.

It is not disputed that according to these books the amount of lumber furnished was the full amount claimed by the plaintiff. Pinkerton further testified as follows concerning the lumber: "It was delivered on the Fraser Pier at Ocean Park, it was the scene of the Ocean Park Scenic Railway, the lumber was used for the building of an extension on the Ocean Park Scenic Railway. I was on the Fraser Pier every day during that period, and saw lumber being delivered and used." After a controversy had arisen over plaintiff's demands on this account, Pinkerton and another witness checked up the lumber piece by piece that was used in the extension of the road and found a total of a little over one hundred and twenty thousand feet, without making any allowance for waste. The plaintiff claims to have actually delivered about one hundred and forty-six thousand feet. There is testimony that the wastage in the use of lumber for a structure of that kind would reasonably be from twenty to

twenty-five per cent. Twenty per cent would be sufficient to cover the discrepancy; and although other witnesses testified that the wastage need not be more than ten per cent, we must assume this controverted question in favor of the findings of the court. Appellant says there is no pretense that the one hundred and twenty thousand feet checked was identified as lumber furnished by the plaintiff. We find, however, in the testimony of Paul D. Hows, who superintended the building of the extension of the railway, a statement that he ordered a majority of the lumber that went into the road, and that he does not recall ordering any lumber from any other company except the plaintiff for use in the extension.

There are several other points wherein it is claimed that the court erred in the admission of testimony. Although counsel neglected to refer us to the pages of the transcript which we were expected to examine, we have given the matters some attention and are satisfied that the rulings of the court with reference thereto were substantially correct.

Finally it is urged that the court should have granted a new trial because of surprise to the appellant in the testimony of one of plaintiff's witnesses, and on account of newly discovered evidence which it is claimed would have enabled the defendant to overcome said surprising testimony. The unexpected element was that according to the witness Lain some of the lumber furnished by the plaintiff to the defendant was not used in the railroad extension, but was transferred to another company to replace lumber which the defendant had previously borrowed from that company for use in some of defendant's work. The testimony thus produced was merely incidental to that part of the evidence whereby the plaintiff was attempting to show why the amount of lumber found in the structure as built was less than the amount of lumber alleged to have been delivered. The court had before it other evidence tending to show that the percentage of waste ordinarily and reasonably occurring was sufficient to account for that difference. It was therefore a matter within the discretion of the court to determine whether or not the new evidence which defendant claims that it could produce if allowed a second trial of the case, would be likely to lead to a different determination of the main issue. "A motion for a new trial on the ground of newly discovered evidence is properly denied where, in the opinion of the trial court, it is

not probable that the additional evidence would have produced a different result.'' (*Atkinson* v. *Western Development Syndicate*, 170 Cal. 511, [150 Pac. 363].)

The order is affirmed.

James, J., and Shaw, J., concurred.